**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| REBECCA L. RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-09-617-D |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Rebecca L. Russell, seeks judicial review of a denial of supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be affirmed.

### I. Procedural Background

Ms. Russell was born April 29, 1980. AR 105. She was 27 years old when she applied for SSI.[1] Ms. Russell's application for SSI was denied initially and on reconsideration. She requested an administrative hearing which was held on August 4, 2008. *See* Administrative Record [Doc. #14] (AR) at 23-35.[2] Following a hearing, an Administrative Law Judge (ALJ) found that Ms. Russell is not disabled. AR 8-22. Ms.

---

[1]The ALJ stated that Ms. Russell filed her application for SSI on March 27, 2007. AR 11. Ms. Russell states that she filed her application on April 13, 2007. The Disability Report – Field Office (Form SSA-3367) states her protective filing date is March 27, 2007. AR 105.

[2]Ms. Russell affirmatively waived her right to appear and testify at the hearing. *See* AR 67.

Russell was 29 years old on the date of the ALJ's unfavorable decision. The Appeals Council denied Ms. Russell's request for review, AR 1-3, and this appeal followed.

## II.   The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined that Ms. Russell had not engaged in substantial gainful activity since the protective filing date. AR 13. At step two, the ALJ determined that Ms. Russell has the following severe impairments: depression, anxiety, and substance abuse. AR 13. At step three, the ALJ found that Ms. Russell's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 16.

> The ALJ next determined Ms. Russell's residual functional capacity (RFC):
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations, to wit, she is unable to perform more than simple tasks and some more complex tasks with normal supervision, and she is unable to tolerate contact with the general public. However, she is able to tolerate coworkers and supervisors on a superficial basis.

AR 18. Given this RFC, the ALJ determined at step four that Ms. Russell can perform the duties of her past relevant work as a film cutter. AR 22.

## III.   Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169

(10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**IV.** **Analysis**

Ms. Russell contends that the Commissioner's final decision should be reversed and remanded for further development of the record. Ms. Russell contends that the ALJ should have recontacted Dr. Feliciano, a treating physician. Ms. Russell bases this assertion on the ALJ's statement concerning records received from Dr. Feliciano:

> Medical records from Rebecca Feliciano, M.D., covering the period from July 11, 2006, through April 23, 2007, reflect that the claimant was treated for depression and anxiety (Exhibit 4F). These records generally suggest that the claimant's depression/anxiety was fairly adequately controlled with medication. In any event, these records contain few legible notations regarding the claimant's symptomatology and/or functional limitations, and

3

there is no report of detailed mental status examination by which to gauge the severity of the claimant's impairments.

AR 13. The ALJ, however, did find Ms. Russell's mental impairments "severe" at step two based on the medical record spanning a period from February 2000 through June 2008.

The record reflects that from July 11, 2006, through April 23, 2007, Ms. Russell attended counseling sessions at Dayspring BHS with Kristie A. Harris, LCSW. The progress notes generated by Ms. Harris indicate that Ms. Russell was experiencing anxiety, anger, and depression. The record indicates that these emotions were generally triggered by situations such as conflicts with family members. Dr. Feliciano's role in Ms. Russell's care was limited to prescribing medication for anxiety and depression. *See* AR 180-193. Dr. Feliciano's notes summarize Ms. Russell's general mental condition and note prescribed medications. As the ALJ observed, none of the records from Dayspring BHS include a description of Ms. Russell's functional limitations. Likewise, as the ALJ noted, the Dayspring BHS records do not include a report of a detailed mental status examination. *See* AR 13.

It is the claimant, however, who bears the burden of proving disability in a social security case, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The regulations specify this requirement:

> Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.

4

20 C.F.R. §§404.1512(c); 416.912(c). The Agency is directed to help a claimant secure identified medical records:

> Our responsibility. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

20 C.F.R. §§ 404.1512(d); 416.912(d). It is only in very limited circumstances that the Agency or ALJ needs to recontact a claimant's medical sources:

> Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. §§ 404.1512(e); 416.912(e).

The Tenth Circuit Court of Appeals has stated that the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with

the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). When a claimant is represented by counsel at the hearing before the ALJ, however, the burden of identifying issues that require further development usually falls on the claimant's counsel:

> in cases . . . where the claimant was represented by counsel at the hearing before the ALJ, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development."

*Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (*quoting Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)).

At the administrative hearing in this case, the ALJ and Ms. Russell's attorney discussed the lack of treating source opinions concerning Ms. Russell's functional limitations and the effect the limitations would have on her residual functional capacity. AR 25-27. It is clear that the ALJ recognized the importance of opinion evidence from treating sources:

> I'm always interested in the opinions of treating sources first. And then after we discuss what, if any, opinions they have, the one-time examining sources, if they express an opinion concerning function by function analysis, or anything that's even close to what we're looking for in an RFC. And, and then finally the non-examining, non-treating State Agency physicians who looked over whatever it what [sic] they looked at and opined at whatever time they opined.

AR 25-26. The ALJ then specifically asked Ms. Russell's attorney if there were any opinions of treating sources regarding Ms. Russell's mental RFC. The attorney stated only

that the records of medical sources did not provide "per se RFCs" but that they would "just have to be read in context." AR 26. The attorney did not request that the ALJ recontact any treating source, nor did he suggest that the record needed to be further developed in any respect.

Although the records from Dayspring BHS lacked a description of Ms. Russell's functional limitations, other records from treating sources do describe Ms. Russell's general mental condition, and these records contain sufficient information for the ALJ to make a decision supported by substantial evidence. On February 7, 2007, for example, Ms. Russell was evaluated at the Oklahoma County Crisis Intervention Center where she had voluntarily gone for help with her depression and anxiety. *See* AR 196-198. Although she was tearful and anxious, the attending physician assessed her global assessment of functioning (GAF) at 60[3] and determined that Ms. Russell was not seriously mentally ill. AR 198.

On March 18, 2008, Ms. Russell again presented voluntarily to the Oklahoma County Crisis Intervention Center. *See* AR 470-472. She had missed her last appointment with her treating physician and had run out of medication. Although her mood was described as anxious, Ms. Russell was assessed with a GAF of 55, a score indicative of moderate difficulty in social or occupational functioning. AR 472.

---

[3]The GAF is a subjective rating on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed.2000) at 32. A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, or "moderate difficulty in social or occupational functioning." *Id.* at 34.

These treating source opinions are consistent with the findings of Ron Smallwood, Ph.D., a non-treating medical source, who reviewed Ms. Russell's records and reported his findings on a Psychiatric Review Technique form included in the record. *See* AR 147-159. Dr. Smallwood concluded that Ms. Russell suffers from mild depression, without psychotic features, and post-traumatic stress disorder. AR. 159. He concluded, however, that Ms. Russell's depression causes no more than a moderate degree of difficulty in maintaining social functioning and in maintaining concentration, persistence or pace. AR 157.

In this case, the ALJ had sufficient medical records and opinions of treating sources to determine the degree of Ms. Russell's limitations. Nothing in the proceedings before the ALJ triggered a duty to recontact Dr. Feliciano. Because the ALJ's decision is supported by substantial evidence in the record as a whole, the Commissioner's final decision should be affirmed.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by August __20th__, 2010. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  30th  day of July, 2010.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE